UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:06CV-6-R

THOMAS O. MOORE                                                                                           PLAINTIFF

v.

LARRY ROGERS, Commonwealth Attorney for the
57th Judicial District, in his official and individual capacities                        DEFENDANT

## MEMORANDUM OPINION

Defendant Larry Rogers has moved for summary judgment or dismissal of the case (Dkt. # 4).  Plaintiff Thomas Moore responded (Dkt. # 5), Rogers replied (Dkt. # 6), and this matter is now ripe for decision.  For the reasons given below, Defendant's motion to dismiss will be **GRANTED**.

## BACKGROUND

Plaintiff Thomas Moore filed the instant suit alleging an array of federal constitutional claims, as well as state law claims, arising out of an indictment brought against the Plaintiff in Russell Circuit Court alleging jury tampering in violation of KRS 524.090.  Specifically, the Complaint alleges, inter alia: violations of Plaintiff's right to free expression; his rights to be free from false arrest, false imprisonment, malicious prosecution, and excessive bail; intentional infliction of emotional distress; gross negligence; deliberate indifference; due process violations; defamation; and prosecutorial misconduct.  The facts giving rise to these claims do not appear to be in dispute.  The evidence indicates that on Ocotber 3, 2003, Moore sent a letter to Tonya Meece, then serving as foreperson of the Russell County grand jury, at Jamestown Bank, where she worked. It appears that Moore believed he was under investigation by the grand jury, and

that this was the subject of his letter. Thereafter, the letter and Ms. Meece's testimony were presented to the grand jury, which on October 28, 2003 returned an indictment against Mr. Moore containing one count of jury tampering. The Russell Circuit Court dismissed the indictment on October 27, 2004, and the Commonwealth appealed the dismissal to the Kentucky Court of Appeals, which on March 11, 2005 reversed and remanded the Russell Circuit Court's dismissal. Moore's motions to reconsider, for rehearing, and for discretionary review by the Supreme Court of Kentucky were all denied, and the case was set for jury trial in Russell Circuit Court on December 2, 2005. At that time, the Commonwealth failed to announce ready, and the case was dismissed by order of the court.

## STANDARD

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is "whether the party bearing the burden of proof has presented a jury question as to each element in the case." *Hartsel v. Keys,* 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of the evidence. To support his position, he must present evidence on which the trier of

fact could find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "[t]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Electronic Data Systems Corp.,* 90 F. 3d 1173, 1177 (6th Cir. 1996).

## ANALYSIS

### Claim and Issue Preclusion and *Rooker-Feldman*

Because they implicate the Court's jurisdiction to hear the case, the Court will first address Defendant's arguments with respect to claim and issue preclusion (*res judicata*) as well as the *Rooker-Feldman* doctrine. Defendant argues that Plaintiff's state law cases preclude his federal complaint, and that his federal complaint would constitute a review of those state-court decisions that is outside of this Court's jursidction under the *Rooker-Feldman* doctrine. 28 U.S.C. § 1738 requires federal courts to give preclusive effect to state court judgments whenever state courts themselves would do so. In *Yeoman v. Commonwealth*, the Kentucky Supreme Court described the *res judicata* doctrine as follows:

> The doctrine of res judicata is that an existing final judgment rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive of causes of action and of facts or issues thereby litigated, as to the parties and their privies, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction.

983 S.W.2d 459, 464 (Ky. 1998) (quoting 46 Am. Jur. 2d *Judgments* § 514). The doctrine of *res judicata* contains two kinds of preclusion: claim preclusion and issue preclusion. *Id.* at 464-65. "Claim preclusion bars a party from re-litigating a previously adjudicated cause of action and

entirely bars a new lawsuit on the same cause of action. Issue preclusion bars the parties from relitigating any issue actually litigated and finally decided in an earlier action." *Id.* at 465 (citations omitted). Issue preclusion does not require absolute identity of the parties, but merely requires that the issue of fact or law have been actually litigated and determined by a final decision or judgment on the merits, that the determination have been essential to the decision or judgment, and that the party against whom issue preclusion is urged have had a full and fair opportunity to litigate the issue. *Id.* (citing Restatement (Second) of Judgments § 27 (1982)); *see also Moore v. Commonwealth*, 954 S.W.2d 317, 319 (Ky. 1997); *Revenue Cabinet v. Samani*, 757 S.W.2d 199, 202 (Ky. App. 1988) (quoting Restatement (Second) of Judgments § 27 (1980)).

In order to address these arguments, a more detailed review of Plaintiff's state-law claims is necessary. As discussed above, the Russell Circuit Court dismissed the grand jury's indictment of Plaintiff on the charge of jury tampering on October 27, 2004, stating that it did not believe the Commonwealth could prove the intent prong of that crime. The Commonwealth appealed that dismissal to the Kentucky Court of Appeals, which reversed the dismissal and remanded the case to Russell Circuit Court to be set for trial. *Commonwealth v. Moore*, 2005 WL 567205, at *3 (Ky. Ct. App. 2005). In so doing, the Court of Appeals addressed the issues raised by the Commonwealth as well as several arguments made by the Plaintiff. By separate order, it ruled on one issue raised by Plaintiff in the instant case, that Defendant was not authorized by Kentucky law to file the notice of appeal from the Russell Circuit Court's dismissal. (Order, Exhibit J to Dkt. # 4). Plaintiff, citing KRS 15.020, argues that it is the responsibility of the Attorney General to notice appeals in cases in which the Commonwealth

has an interest. Whatever the force of this argument (and the Court expresses no opinion on its validity or lack thereof), it is an argument that was raised before and rejected by the Kentucky Court of Appeals. Principles of issue preclusion, as discussed above, dictate that Plaintiff is precluded from raising that claim in this subsequent federal suit.

The Court of Appeals held that the Russell Circuit Court exceeded its authority in dismissing the case because it did so on the basis of a factual finding - its conclusion that the Commonwealth would not be able to prove the intent prong of jury tampering - that it was not authorized to make. In this regard, the Court of Appeals said:

> The trial court, during the hearing on Moore's motion for reconsideration, stated that the Commonwealth would have difficulty proving intent and that it did not believe a jury would convict Moore of jury tampering. This is exactly the kind of decision which a trial court is without authority to make under *Isham*. Consequently, the indictment must be reinstated and the Commonwealth given the opportunity to present its evidence to a jury.

2005 WL 567205, at *2 (discussing *Commonwealth v. Isham*, 98 S.W.3d 59 (Ky. 2003)). The Court of Appeals also rejected Moore's alternative arguments; namely, that the Commonwealth had engaged in prosecutorial misconduct and that his letter could not as a matter of law constitute jury tampering. *Id.* at *1-2. As to the prosecutorial misconduct, Moore apparently argued that the Commonwealth presented false evidence against him and improperly inquired into his banking transactions. The Court of Appeals held that "[t]here is no evidence in this case that the Commonwealth presented false evidence against Moore." *Id.* at *1. As to the banking transactions, it held:

> The questions directed towards Meece about Moore's banking accounts attempted to establish whether she was familiar with his signature and whether she had any personal dealings with him at the bank such that he would be aware of her grand jury service. The Commonwealth did not seek to elicit any meaningful information about his accounts including whether they were business or personal,

5

how many there were, or what balances they had.

*Id.* As to the issue of whether the indictment failed to charge a crime, Moore argued that his letter could not have constituted jury tampering because there was no case against him before the grand jury. *Id.* at *2. However, the Court of Appeals, reviewing the contents of the letter, held that "Moore believed that he was being investigated by the grand jury and was seeking to influence [Meece's] decision as to whether she would vote to indict him..." *Id.* Finally, the Court of Appeals rejected Moore's alternative argument on this matter that the letter was "merely an attempt to inform the grand jury that he wishe[d] it to consider his testimony." *Id.* In rejecting this argument, the Court of Appeals said that "even if Moore's letter did not seek to influence Meece's potential vote on an indictment, an argument exists that he improperly tried to influence her vote on whether the grand jury would hear his testimony." *Id.* As noted above, Moore's requests for reconsideration by the Court of Appeals and discretionary review by the Kentucky Supreme Court were denied. (Exhs. H and I to Dkt. # 4).

The issue, then, is what preclusive effect, if any, the opinion in *Commonwealth v. Moore* has on the instant case. Plaintiff's claims that Rogers engaged in prosecutorial misconduct are precluded under the doctrine of issue preclusion. As discussed above, issue preclusion requires that (i) the issue of fact or law have been actually litigated; (ii) it have been determined by a final decision or judgment on the merits; (iii) the determination have been essential to the decision or judgment, and (iv) that the party against whom issue preclusion is urged have had a full and fair opportunity to litigate the issue. The issue of prosecutorial misconduct on the part of Rogers with respect to the presentation of evidence to the grand jury was actually litigated before the Kentucky Court of Appeals, as indicated by the written opinion. The disposition of Moore's

6

case was on the merits, and the determination that Rogers engaged in no prosecutorial misconduct was essential to the rejection by the Court of Appeals of Moore's argument that *Commonwealth v. Baker* supported the trial court's dismissal of the indictment.  Finally, Moore had a full and fair opportunity to litigate this issue before the Court of Appeals; although the Commonwealth's appeal occurred prior to the ultimate disposition of the criminal case, none of Rogers's conduct after the appeal is argued to have been misconduct.  Rather, Moore implies that the Commonwealth's decision to announce "not ready" for jury trial constitutes evidence that the *seeking of the indictment* constituted misconduct.  Therefore, Moore is precluded from raising the same issue in this Court.  The Court's examination of the Complaint reveals that each allegation contained therein rests on the misconduct alleged in Moore's appeal of his criminal case; therefore, the Court has no jurisdiction to hear the case.

**Absolute and Qualified Immunity**

Out of an abundance of caution, the Court will nevertheless analyze the immunity issues presented as grounds for dismissal.  Rogers also argues that the immunity from suit granted to him as a result of his position as Commonwealth Attorney bars Plaintiff's claims against him.  As the Sixth Circuit has said: "Absolute prosecutorial immunity, like absolute judicial immunity, is a common law principle that shields a prosecutor from § 1983 liability."  *Cooper v. Parrish*, 203 F.3d 937, 946 (6th Cir. 2000) (citing *Imbler v. Pachtman*, 424 U.S. 409, 430-31, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976)).  Not every act of a prosecutor is entitled to the absolute immunity; rather, courts use a "functional" approach to determine "whether the prosecutor's activities are 'intimately associated with the judicial phase of the criminal process.'" *Id.*, citing *Imbler*, 424 U.S. at 430.  The initiation of criminal charges and presentation of evidence to the

grand jury for purposes of doing so falls squarely within this category. This is so even if, as Plaintiff alleges here, the motivation for doing so is malice or the decision is otherwise taken in bad faith. *Grant v. Hollenbach*, 870 F.2d 1135, 1138 (quoting *Joseph v. Patterson*, 795 F.2d 549, 554 (6th Cir.1986)). Therefore, even if Plaintiff's claims were not barred by the issue preclusion doctrine, Defendant's absolute immunity would bar Plaintiff's claims.

**Sovereign Immunity**

Plaintiff's Complaint names the Defendant Rogers in both his individual and official capacities. Rogers argues that the official capacity claims must be dismissed because they are barred by the Eleventh Amendment. "It is ... well established that even though a State is not named a party to the action, the suit may nonetheless be barred by the Eleventh Amendment nonetheless." *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974). The *Edelman* court went on to quote an earlier decision:

> In *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945), the Court said: "(W)hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." *Id.*, at 464, 65 S.Ct., at 350.

*Id.* As the Sixth Circuit has said: "[S]ince a[n] official-capacity claim for retroactive relief is deemed to be against the State whose officers are the nominal defendants, the claim is barred by the Eleventh Amendment." *Doe v. Wigginton*, 21 F.3d 733, 736-37 (6th Cir.1994). In this case, Plaintiff does not seek any prospective relief, only monetary damages. (Complaint, Dkt. # 1, at p. 7). Therefore, the Eleventh Amendment bars the official-capacity claims against Defendant Rogers.

## CONCLUSION

8

For the reasons stated above, Defendant's Motion to Dismiss is **GRANTED**. An appropriate order shall issue.